**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KHUSHI PARTNERSHIP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00265** |
| | ) | **Judge Aleta A. Trauger** |
| **BERKSHIRE HATHAWAY** | ) | |
| **HOMESTATE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM and ORDER

Before the court is plaintiff Khushi Partnership's Motion to Compel Appraisal (Doc. No. 26), which defendant Berkshire Hathaway Homestate Insurance Company ("BHHIC") opposes as premature and potentially unnecessary (Doc. No. 29). The plaintiff filed a "Rebuttal," reiterating that it has met all necessary conditions precedent for invoking its right to an appraisal. (Doc. No. 23.) For the reasons set forth herein, the Motion to Compel Appraisal will be granted.

## I.      FACTS AND PROCEDURAL HISTORY

The plaintiff filed suit in state court in Cheatham County, Tennessee on March 9, 2022, and, on April 13, 2022, the defendant timely removed the case to this court based on diversity jurisdiction. (Doc. No. 1.) In July 2022, the plaintiff filed an unopposed Motion to Amend the Complaint to correct the name of the plaintiff in the caption and body of the pleading. The Amended Complaint (Doc. No. 24) was filed on July 25, 2022, and the defendant filed an Amended Answer (Doc. No. 25) the same day. The plaintiff's Motion to Compel and supporting Memorandum (Doc. No. 27) were filed the next day.

The court accepts as true, at this stage in the proceedings, the facts alleged in the Amended Complaint, which generally states as follows. Plaintiff Khushi Partnership ("Khushi") owns business premises ("Premises") located at 2389 Highway 12 North, Chapmansboro, Tennessee 37035. Khushi purchased from BHHIC an insurance policy, No. 02PFM056458-02 ("Policy"), to cover the Premises. The Policy was in effect from January 8, 2020 through January 8, 2021. The plaintiff filed a copy of the Policy with its Motion to Compel. (Doc. No. 26-1.)

On October 23, 2020, a storm caused severe hail and wind damage to the exterior and interior finishes of the Premises. The plaintiff filed a claim with BHHIC, Claim No. 00566769, in connection with the damages caused by the storm. Khushi employed a public adjuster to assess the damages and submitted written "Proof of Loss" to BHHIC. According to the plaintiff, damages from wind and hail are covered by the Policy, and the defendant admitted that there was covered damage caused by wind, but the defendant "significantly undervalued the claim." (Doc. No. 24 ¶ 15.) In its Amended Answer, BHHIC admits that damages from wind and hail are covered by the Policy, "subject to all terms, conditions, limitations, and exclusions" set forth in the Policy. (Doc. No. 25 ¶ 15.) Khushi has demanded payment under the Policy from BHHIC, but BHHIC has refused to pay. Based on these allegations, the Amended Complaint sets forth a single claim for breach of contract.

BHHIC's Amended Answer denies liability and asserts several affirmative defenses, including that the Policy incorporates a number of exclusions and that the plaintiff's damages resulted in part from events that fall within the scope of Policy exclusions. It also asserts that the plaintiff's claimed damages are excluded to the extent they occurred outside the scope of the

limitations period,[1] that the plaintiff failed to mitigate its damages, and that it failed to promptly notify the defendant of the loss. (Doc. No. 25, at 7–13.)

The plaintiff's demand for an appraisal consists simply of an email from plaintiff's counsel to defendant's counsel, stating, "We are invoking the appraisal provision of the policy. Thanks." (Doc. No. 29-1, at 2.) The defendant's response refers to its Answer and, in particular, the affirmative defenses set forth therein to support its position that "issues in this case involve coverage and causation" that are not "appropriate for appraisal." (Doc. No. 26-4.) The defendant's response also states that Khushi's demand for an appraisal "does not make clear what Plaintiff is seeking to appraise" and that BHHIC is willing to consider a more specific demand. (*Id.*)

According to the Policy,

If [the insured and the insurer] disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, [the insurer] will still retain [its] right to deny the claim.

(*See* Doc. No. 27, at 2 (quoting Policy).)

---

[1] The plaintiff filed suit on March 9, 2022 to recover damages caused by a storm that took place less than two years previously, on October 23, 2020, within the Policy coverage period. The defendant itself asserts that the Policy incorporates a two-year limitation period. The defendant's assertion that "some of the damage for which Plaintiff seeks insurance coverage occurred more than two years prior to the date on which Plaintiff brought this action" (Doc. No. 25, at 12) seems to be a convoluted way of saying that some of the damages for which the plaintiff seeks coverage were not actually caused by the October 23, 2020 storm.

The plaintiff asserts that the Premises incurred damages during the October 2020 storm, that it promptly reported the damages to BHHIC, and that BHHIC acknowledged coverage and made certain payments in connection with the damages. However, the plaintiff maintains that the payments were "markedly insufficient." (Doc. No. 27, at 3.) It asserts that there are no coverage disputes or disputes about causation, that it is entitled to invoke the appraisal process under the Policy, and that an appraisal is appropriate in this case, as it would be "consistent with the judicial economy that results from avoiding the needless and wasteful litigation of the issues of loss and value." (Doc. No. 27, at 5.) The plaintiff also contends that the appraisal process is likely to eliminate the need for additional litigation or, at a minimum, limit the scope of the issues that need to be litigated. (*Id.*)

In its Response, as in its response to the initial demand for an appraisal, the defendant takes issue with the plaintiff's assertion that this case does not involve any disputes as to causation or coverage on the basis that this assertion "ignores that BHHIC has asserted eight affirmative defenses to the Amended Complaint" (Doc. No. 29, at 1), all of which, according to BHHIC, relate to coverage and liability, rather than merely to the quantification of the plaintiff's damages. It asserts that the plaintiff's motion should be denied, at least at this juncture, because

> [t]he issues presented by this litigation go beyond simply determining the amount of the loss. Because Tennessee law prohibits appraisal to determine the ultimate liability under the Policy, it would be improper for an appraisal panel in this case to determine the legal issues involved.
>
> Further, Tennessee law is consistent with the majority of jurisdictions that have held that legal and coverage issues should be resolved before commencement of appraisal for the sake of efficiency, and to preclude manifest mistake by the appraisal panel.

(Doc. No. 29, at 6–7 (collecting cases).)

## II.    LEGAL STANDARDS

Jurisdiction in this case is premised upon 28 U.S.C. § 1332, as the controversy is between citizens of different states and the amount in controversy is greater than $75,000, exclusive of interest and costs. The court, accordingly, must apply the law of the forum state, Tennessee, in interpreting the parties' contract and its provisions. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008).

"Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally." *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). "An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006). Additionally, "insurance policies should be construed as a whole in a reasonable and logical manner." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305–06 (Tenn. 2007). "Under Tennessee law, an appraisal provision in an insurance policy is valid." *Bard's Apparel Mfg., Inc. v. Bituminous Fire & Marine Ins. Co.*, 849 F.2d 245, 249 (6th Cir. 1988) (citing *Hickerson v. Ger.-Am. Ins. Co.*, 33 S.W. 1041 (Tenn. 1896)).

## III.    DISCUSSION

In this case, there is essentially no dispute as to the validity and construction of either the Policy generally or the appraisal provision specifically. Rather, the defendant's position appears to be that the court should deny an appraisal altogether, on the basis that the only issue the court *really* has to resolve is whether there is coverage for the damages to the Premises at all. The court, in short, is not persuaded. The real issue is not *whether* to permit an appraisal, but whether the court, in the exercise of its discretion, should compel the appraisal now or wait until some later date, when the alleged coverage issues have been resolved.

Courts around the country have regularly granted motions to compel appraisals, with the caveat that, absent an express clause to the contrary in the insurance contract, "appraisers have no power to decide coverage or liability issues." *Merrimack Mut. Ins. Co. v. Batts*, 59 S.W.3d 142, 152–53 (Tenn. Ct. App. 2001) (compiling cases). If the parties have already decided liability, then the appraisal process effectively resolves the dispute as to the amount of the loss. However, if liability is disputed, an appraisal on the "amount of loss" would not "vest the appraisers with the authority to decide questions of coverage and liability." *Id.* at 152. In other words, questions of coverage and liability are always questions that must be resolved by the courts, even when the amount of the loss is decided through the appraisal process. *See, e.g.*, *Kush Enters., LLC v. Mass. Bay Ins. Co.*, No. 3:18-CV-492, 2019 WL 13117568 (E.D. Tenn. Nov. 7, 2019) (noting that its decision granting a motion to compel an appraisal over the defendant's objection "does not expand the scope of the appraisal process" and confirming that appraisers cannot "make final determinations on the causation, scope, or liability under the policy, just the amount of the loss," and that the defendant retained the right to "dispute those issues after the appraisal is complete," in which event the court would decide them (citing *Merrimack Mut. Fire. Ins. Co.*, 59 S.W.3d at 153)).

Of course, questions of coverage, causation, and liability are often intertwined with the question of the amount of loss involved. *Accord, e.g.*, *Hill v. Auto-Owners (Mut.) Ins. Co.*, No. 4:19-cv-78, 2020 WL 7034321, at *10 (E.D. Tenn. Nov. 30 2020) ("[P]ractically speaking, it would be difficult to completely divorce causation and coverage findings from an appraised loss."); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 890 (Tex. 2009) (recognizing that "[t]he line between liability and damage questions may not always be clear."). And courts in different jurisdictions have evolved different means of handling these situations. In some states, the courts

have concluded that, while "[t]here may be a few times when appraisal is so expensive and coverage is so unlikely that it is worth considering beforehand whether an appraisal is truly necessary," "unless the 'amount of loss' will *never* be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts." *Johnson*, 290 S.W.3d at 895 (emphasis added).

Other courts have held that, where coverage issues predominate over the question of the amount of loss, the coverage issues should be resolved first, before an appraisal is required. *See, e.g.*, *SSDD, LLC v. Underwriters at Lloyd's, London*, No. 4:13-cv-258 CAS, 2013 WL 2420676, at *4 (E.D. Mo. June 3, 2013) (applying Missouri law, finding that the dispute before it was "primarily one concerning coverage, as opposed to the amount of loss, and therefore enforcement of the appraisal provision is not appropriate"); *Hawkinson Tread Tire Serv. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 245 S.W.2d 24, 28, (Mo. 1951) (holding that, where "the amount of the loss was incidental to the actual underlying (legal) controversy between the parties as to the meaning of the insurance contract and its application to the facts," the legal issues should be resolved before an appraisal was required).

And still other courts appear to have held that it is appropriate to order an appraisal before resolving coverage disputes *only* if the insurer has admitted that there is a covered loss and the *only* issue to be resolved is the amount of loss. *See, e.g.*, *Williamson v. Chubb Indem. Ins. Co.*, No. 11-CV-6476, 2012 WL 760838, at *2 (E.D. Pa. Mar. 8, 2012) ("A condition precedent to appraisal is that there be an admission of liability and a dispute only as to the dollar value of the loss." (citing *Ice City, Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236, 240 (Pa. 1974)).

The Tennessee courts have not actually been confronted with the question, though the Tennessee Court of Appeals has noted, with apparent approval, a decision by a Michigan court

"suggest[ing] that disputed coverage and liability issues are best submitted to the courts before any dispute regarding the amount of the loss is submitted to the appraisers." *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d at 153 (citing *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469 (Mich. Ct. App. 1991)). The Tennessee federal district courts considering motions to compel appraisals have generally approached the issue with an eye toward whether the disputed amount of loss predominates over coverage and liability issues, or vice versa, and thus whether ordering an appraisal early in the litigation process or resolving disputed legal issues first would be more likely to further interests of judicial economy and party resources. *See, e.g.*, *Glob. Aerospace, Inc. v. Phillips & Jordan, Inc.*, No. 3:15-CV-105-PLR-CCS, 2015 WL 5514627, at *2 (E.D. Tenn. Sept. 17, 2015) (granting motion to compel appraisal, finding the appraisal provision in the policy valid and that compelling appraisal, besides being consistent with the policy, would "potentially save both party resources and judicial resources," increase "the likelihood of the parties reaching a settlement will increase, because each party will know where it stands upon a return to litigation," "give both of the parties a target at which to direct their arguments either in support [of]or opposition" to the umpire's decision, "potentially eliminate the need for future litigation in this Court, and at a minimum, . . . streamline any future litigation").

In this case, the plaintiff characterizes the dispute as primarily involving the amount of loss. As noted, the defendant raises myriad affirmative defenses, but it does not dispute that a covered event giving rise to covered losses occurred during the Policy coverage period or that the plaintiff's lawsuit was filed within the statute of limitations established by the Policy. Although it disputes whether the plaintiff submitted a timely claim, it has not moved for dismissal on that basis or shown that the claim is barred as untimely by a specific Policy requirement. It claims that the Policy excludes coverage for damage to the roof, but it has not affirmatively established,

particularly at this early stage of the litigation, that the plaintiff is actually claiming coverage for damage to the roof.

Further, insofar as the defendant asserts that causation and coverage issues are inextricably intertwined with the question of the amount of loss actually covered by the Policy, the court finds persuasive an observation made by the Texas Supreme Court in a not-dissimilar situation:

> [A]ppraisers must always consider causation, at least as an initial matter. An appraisal is for damages caused by a specific occurrence, not every repair a [covered property] might need. When asked to assess hail damage, appraisers look only at damage caused by hail; they do not consider leaky faucets or remodeling the kitchen. When asked to assess damage from a fender-bender, they include dents caused by the collision but not by something else. Any appraisal necessarily includes some causation element, because setting the "amount of loss" requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else.

*Johnson*, 290 S.W.3d at 893. The court concluded in *Johnson* that, even if the appraisal might turn out to involve, not only damage but liability issues as well, that factor alone would not dictate prohibiting the appraisal as an initial matter. It highlighted a number of reasons why the appraisal should proceed over the defendant's objection in that regard: (1) that appraisal is normally "intended to take place before suit is filed," and "[a]llowing litigation about the scope of appraisal before the appraisal takes place would mark a dramatic change in Texas insurance practice, and surely encourage much more of the same"; (2) that the appraisal could usually "be structured in a way that decides the amount of loss without deciding any liability questions"; (3) that "the scant precedent involving disputes about the scope of appraisal suggests that appraisals generally resolve such disputes"; and (4) that, "even if an appraisal award is flawed, that can be easily remedied by disregarding it later." *Id.* at 894–95. Moreover, the Policy in this case unambiguously provides that the defendant retains its right to deny a claim—that is, to dispute liability and coverage—even when an appraisal takes place. (*See* Doc. No. 26-1, at 11.)

The court finds under the circumstances presented here that the defendant's *ipse dixit* in its Amended Answer that coverage and liability issues predominate over the question of the amount of loss does not make it so and that the defendant has not established that an appraisal is unwarranted in this case. It seems clear that proceeding with an appraisal will expedite resolution of this case, economize party and judicial resources, and increase the likelihood of settlement.

## IV.     CONCLUSION AND ORDER

For the reasons set forth herein, the plaintiff's Motion to Compel Appraisal (Doc. No. 26) is **GRANTED**, and the parties are **ORDERED** to proceed with an appraisal in accordance with the procedure for doing so outlined in the Policy, and to do so in a prompt and reasonable manner.

The court notes that the plaintiff has not requested a stay during the appraisal, nor do the circumstances indicate that a stay would be necessary or advisable.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge